United States District Court
Southern District of Texas

**ENTERED**

April 25, 2025

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-24-428 |
| | § | |
| ANGEL LEE CONTRERAS | § | |

**MEMORANDUM OPINION AND ORDER**

Angel Lee Contreras ("Defendant") is charged with one count of possession with intent to distribute fentanyl, a controlled substance. Pending before the court is Defendant Contreras' Opposed Motion to Suppress Drugs Seized in Violation of the 4th Amendment of the United States Constitution ("Defendant's Motion to Suppress") (Docket Entry No. 22). For the reasons stated below, Defendant's Motion to Suppress will be denied.

## I.  Background

### A.  Procedural History

A grand jury indicted Defendant on one count of possession with intent to distribute a controlled substance (fentanyl) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi).[1] Defendant filed his Motion to Suppress, and the Government

---

[1]Indictment, Docket Entry No. 1.  The court herein refers to the United States of America as "the Government."  All page numbers reference the pagination printed at the top of the page by the court's Electronic Case Filing system.

responded.[2]  Defendant challenges various aspects of the stop and
search that ended in the seizure of drugs from his vehicle.
Defendant argues (1) that there was no probable cause to stop the
vehicle, (2) that there was no basis to detain him long enough to
conduct a drug dog sniff, (3) that the drug sniff was an unlawful
search because it took place on private property where he was an
overnight guest, (4) that there was no probable cause to search his
vehicle, (5) that it was unconstitutional for officers to seize his
keys to search his vehicle, and (6) a warrant was required to
search inside the backpack and suitcase that were found in his
car.[3]  On April 17, 2025, the court held an evidentiary hearing on
Defendant's Motion to Suppress.[4]

**B.    Evidence**

The Government presented a recorded call from Anthony Flores
to the Laporte Police Department ("Laporte PD") regarding Defendant
on July 28, 2023, at 3:07 a.m.  Flores gave his full name and
contact information to the dispatcher.  Flores stated that the
Defendant, his cousin, was staying at his house and had threatened
him.  Flores stated that he believed the Defendant had a large
amount of fentanyl.  Flores stated that Defendant was away but

---

[2]Defendant's Motion to Suppress, Docket Entry No. 22;
United States' Response to Defendant's Motion to Suppress Drugs
Seized ("Government's Response"), Docket Entry No. 39.

[3]Defendant's Motion to Suppress, Docket Entry No. 22, pp. 2-7.

[4]Motion Hearing, Docket Entry No. 44.

-2-

would likely be back soon.  Flores asked the dispatcher to send an officer to the residence.

The dispatcher sent Officer Louis Norman, who testified at the evidentiary hearing.  Norman testified that he went to the residence and spoke with Flores about the tip.  Flores described Defendant's vehicle (a black Cadillac with a vanity license plate).  Norman parked down the street from Flores's house and soon observed a black Cadillac with license plate "INKD UP" driving toward Flores's house.  Norman ran a license plate check on the car, which revealed that the car's insurance status was "unconfirmed."  Norman observed Defendant turning into the driveway of Flores's house without signaling a turn.  The Government introduced video footage from Officer Norman's dashcam, which confirmed that Defendant did not signal his turn.

Norman conducted a traffic stop at the location, and Defendant exited and locked the vehicle as Norman was approaching.  In video footage of the stop, Defendant confirmed that his car was not insured.  Pursuant to Laporte PD's policy regarding uninsured vehicles, Norman decided that the vehicle must be towed.  The Government introduced the Laporte PD's "Vehicle Towing and Release Policy," which authorizes officers to have uninsured vehicles towed.  Norman testified and the footage confirmed that Defendant became increasingly agitated and combative as the stop progressed.

While waiting for a tow truck, Norman deployed his narcotics canine, walking him around the car.  Norman testified to his

-3-

canine's alert behaviors (including sudden excitement and rapid breathing) and testified that his canine alerted near the driver's side front door.  Marijuana was later found in the nearby front seat center console.  Video footage of the stop taken from Norman's body camera shows the canine become excited when sniffing the driver's side door.  Norman took Defendant's car keys and searched the driver's seat area, finding marijuana in the center console. Norman then proceeded to search the rest of the vehicle, finding a closed suitcase and closed backpack in the trunk.  Norman opened and searched the suitcase, finding eight clear bags of pills later determined to contain fentanyl, and the backpack, finding two bricks of a powdery substance later determined to contain fentanyl.

Norman testified that Laporte PD had a standard inventory policy for seized vehicles that included searching the vehicle for valuables and opening closed containers.

## II.  **Legal Standard**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV. "Warrantless searches and seizures are presumptively unreasonable, subject to certain exceptions."  United States v. McKinney, 980 F.3d 485, 490 (5th Cir. 2020).  "A 'Terry stop' is a 'special category of Fourth Amendment "seizures,"' in which an officer may briefly detain an individual for further investigation, if the

-4-

officer has <u>reasonable suspicion</u> the individual is engaged in criminal activity." <u>United States v. Wright,</u> 57 F.4th 524, 530 (5th Cir. 2023) (emphasis added) (quoting <u>Terry v. Ohio,</u> 88 S. Ct. 1868 (1968)). Reasonable suspicion is "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" <u>Kansas v. Glover,</u> 140 S. Ct. 1183, 1187 (2020). "'Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" <u>Id.</u> "The reasonable suspicion inquiry 'falls considerably short' of 51% accuracy." <u>Id.</u> at 1188.

"The [<u>Terry</u> stop] must be 'justified at its inception[.]'" <u>Wright,</u> 57 F.4th at 530. Moreover, "the detention [must have been] reasonably related in scope to the circumstances that justified the interference in the first place." <u>United States v. Garza,</u> 275 F.3d 1078 (5th Cir. 2001). But "if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." <u>United States v. Lopez-Moreno,</u> 420 F.3d 420, 431 (5th Cir. 2005).

"[A]n inventory search of a [lawfully] seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's

-5-

owner, (2) protecting the police against claims or disputes over
lost or stolen property, and (3) protecting the police from
danger." United States v. McKinnon, 681 F.3d 203, 209 (5th Cir.
2012).

### III.  Analysis

**A.    Lawfulness of the Initial Stop**

Norman testified that his license plate check showed
Defendant's vehicle to have an "unconfirmed" insurance status and
that cars with an unconfirmed status usually lack insurance.
Norman also testified, and video footage confirmed, that Defendant
did not signal his turn into Flores's driveway.  The court found
Norman to be a very credible witness.  The unconfirmed insurance
status and the non-signaled turn, combined with the information
provided by Flores, established "a particularized and objective
basis for suspecting [Defendant] of criminal activity." Glover,
140 S. Ct. at 1187.  It was therefore lawful for Norman to initiate
a Terry stop.

**B.    Duration of the Stop**

Defendant argues that any reasonable suspicion was not
sufficient to justify extending the stop long enough for a canine
sniff.  One of Norman's legitimate bases for conducting a Terry
stop was to determine whether Defendant was driving without
insurance.  Defendant confirmed that he did not have insurance.  At
that point, Laporte PD policy authorized Norman to seize the

-6-

vehicle and have it towed. Defendant cites no authority that lack of insurance is an inadequate basis for police to seize and tow a vehicle. Once Norman decided to have the vehicle towed, it was necessary to wait for a wrecker, and Norman deployed his canine during that wait. Norman testified that the time between the initial stop and the canine sniff was less than 10 minutes. The court concludes that Norman did not "extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015).

## C.  Location of the Stop

Defendant argues that the sniff was an unlawful search because it took place on private property where he was an overnight guest. Overnight house guests have a reasonable expectation of privacy, and therefore Fourth Amendment rights, in the house where they are staying. Minnesota v. Olson, 110 S. Ct. 1684, 1688 (1990). But the dog sniff would only implicate the Fourth Amendment if Flores's driveway is part of the house's protected "curtilage." See United States v. Beene, 818 F.3d 157, 162 (5th Cir. 2016). In Beene, an officer initiated a traffic stop of the defendant as he was pulling into his driveway. Id. at 159. During the stop, officers deployed a narcotics canine, which alerted on the car, leading to the discovery of drugs. Id. at 160. In evaluating the lawfulness of the sniff, the Fifth Circuit stated that although "[a] dog sniff is typically not a search . . . [a] sniff may

-7-

nevertheless be an unwarranted search when it involves an intrusion into a constitutionally protected area, such as the home or its curtilage." Id. at 162.  The court stated the factors weighed in determining whether an area is curtilage:

> (1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by.

Id. (internal quotation marks omitted).  Although the driveway was close in proximity to the home, it was open, could be observed from the street, and lacked any no-trespassing signs.  Id.  The court concluded that the defendant's driveway was not part of the house's curtilage and therefore that the dog sniff did not implicate the Fourth Amendment.  Id. at 162-63.

In the video footage introduced by the Government, Flores's driveway is close to the house but completely open to and visible from the street.  Moreover, there was no evidence of any no-trespassing signage.  The court concludes that Flores's driveway was not part of the house's protected curtilage, and the dog sniff did not implicate the Fourth Amendment.

**D.   The Basis for Initiating the Vehicle Search**

Defendant argues that there was no probable cause to search the vehicle.  Defendant in particular challenges the reliability of Norman's assertion that his canine alerted.  The court found Norman's testimony regarding his canine's alert to be credible, and footage of the stop shows that the canine became suddenly excited

-8-

at the driver side door.  This alert established probable cause to search at least that part of the car.  United States v. Sanchez-Pena, 336 F.3d 431, 444 (5th Cir. 2003) ("We have repeatedly affirmed that an alert by a drug-detecting dog provides probable cause to search.").  Moreover, the court agrees with the Government that the Laport PD's inventory, as described by Norman, would have led to the "inevitable discovery" of the fentanyl in the car's trunk.  See United States v. Ochoa, 667 F.3d 643, 650 (5th Cir. 2012).

**E.    Taking Defendant's Keys to Search the Trunk**

Assuming without deciding that the canine alert did not establish probable cause to search the entire vehicle, the marijuana did.  Multiple opinions have held that the presence of drugs in one part of a vehicle establishes probable cause to search the rest of the vehicle.  United States v. Helguera-Del Rio, 775 F. App'x 838, 840 (9th Cir. 2019) ("[O]bservation of a white substance believed to be drug residue on a dollar bill in the passenger door pocket . . . gave the officer probable cause to search the rest of the vehicle for drugs."); United States v. Ortiz, 577 F. App'x 627, 628 (8th Cir. 2014) (per curiam).  Because Norman had probable cause to search the locked trunk, the court concludes it was lawful for him to seize Defendant's keys for that purpose.  See United States v. Wynn, Criminal Case No. 22-51-DLB-CJS, 2023 WL 7449849, at *20 (E.D. Ky. Aug. 25, 2023) (collecting cases).

**F.    Opening the Backpack and Suitcase**

Because Norman had probable cause to search the entire vehicle for drugs, he lawfully opened the backpack and suitcase.    See United States v. Ross, 102 S. Ct. 2157, 2172 (1982).    Moreover, even if Norman's probable cause did not extend to opening these containers, the Laporte PD's inventory search would have required searching them, leading to the "inevitable discovery" of the fentanyl.    See Ochoa, 667 F.3d at 650.

## IV.    Conclusions and Order

The court concludes that Officer Norman had reasonable suspicion such that he lawfully conducted a Terry stop of Defendant.    Once Defendant admitted that he lacked insurance, Norman lawfully decided to have Defendant's vehicle towed.    Norman conducted a lawful canine sniff while waiting for the tow truck, which established probable cause to search at least the driver's seat area for drugs.    Norman's discovery of marijuana in the center console gave him probable cause to search the rest of the vehicle for drugs, including opening the backpack and suitcase he found in the trunk.    Defendant Contreras' Opposed Motion to Suppress Drugs Seized in Violation of the 4th Amendment of the United States Constitution (Docket Entry No. 22) is therefore **DENIED.**

**SIGNED** at Houston, Texas, on this 25th day of April, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-10-